# ATTACHMENT A:
## Affidavit in Support of Search Warrant for Two Phones Seized by Law Enforcement from Jeffrey Donald Black on December 1, 2020

I, M. Clint Bridges, Task Force Officer (TFO), U.S. Drug Enforcement Administration (DEA), presently assigned to Charlotte, North Carolina, being duly sworn, state:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—one cellular telephones seized on December 01, 2020, described in Attachment B -- which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment C.

2. I am a Task Force Officer in the State of North Carolina within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Titles 18, 19, 21, 31 of the United States Code and other related offenses. I am also a Detective with the Gastonia Police Department (GPD) and have been a police officer since December 2002. I am currently assigned as a Task Force Officer for the U.S. Drug Enforcement Administration (DEA).

3. As a Detective and Task Force Officer assigned to DEA, I have investigated street-level distributors and large-scale drug trafficking organizations utilizing many investigative techniques. I have actively participated in multiple narcotics investigations, undercover drug purchases, searches and seizures, surveillance, intelligence analysis, drug reversals, conspiracy investigations, arrests, and interviews and interrogations. I have obtained and executed search warrants, conducted interviews of suspects, and utilized confidential informants to conduct numerous investigations. I have conducted multiple investigations regarding the unlawful

importation, possession, and distribution of controlled substances and conspiracies associated with criminal narcotics, in violation of state and federal offenses. I have also conducted multiple investigations regarding bulk cash smuggling and money laundering, which are commonly derived from money proceeds of narcotics trafficking. Based upon my training and experience, I am familiar with narcotic traffickers' methods of operation, including the distribution, storage, and transportation of narcotics as well as the collection and concealment of money proceeds of narcotics trafficking.

4. The information contained in this Affidavit is provided for the limited purpose of establishing probable cause in support of a search warrant; therefore, I have not included each and every fact known to me concerning this investigation.

5. Based on my training and experience, participation in controlled substance investigations and financial investigations, which result from violations of narcotics laws, I know:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. All of these types of information can potentially relate to drug trafficking in the hands of a drug trafficker.

   b. Drug traffickers commonly use cellular telephones to communicate with other members of their organization, with sources of supply, and with customers. In fact, cellular telephones are considered a "tool of the trade" as drug traffickers often have multiple cellular telephones to give or receive instructions as they complete drug transactions. Drug traffickers are aware that it is much more difficult for investigators to identify and link a specific cellular telephone number to them as

2

opposed to a fixed or hard line telephone. It is also common for drug traffickers to utilize cellular telephones registered in nominee names. This enables them to conduct illegal drug trafficking activities by telephone, with less of a chance of being identified.

c. Cellular telephones have the capability of storing numerous telephone numbers of other individuals. Cellular telephones also can have "Caller ID" and "Text Messaging" features on the telephones. "Caller ID" identifies the telephone numbers of the incoming calls. Text messages can be stored on the cellular telephone and also identifies whom the message was sent to or whom it came from. In addition, cellular telephones have the capability of recalling past telephones numbers dialed.

d. The data stored on cellular telephones is generally easy to delete. In fact, many phones have the ability to have their memory completely deleted remotely, such as via the Internet.

e. Electronic devices, including some cell phones, are devices capable of storing various types of data, including downloaded music, video, voice memos, photographs, and emails from computer or Wi-Fi connection. The fact that such devices can hold or contain photographs is significant due to the fact that drug traffickers often maintain photographs of co-conspirators, "trophy" photographs of drugs, or proceeds, or other evidence of drug trafficking. The fact that certain electronic devices can hold or contain email, text, or other similar data content is significant due to the fact that such devices can store text data that includes, but is not limited to, records of drug transactions and contact information for drug-trafficking co-conspirators.

f. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

g. Tablet and Laptop: A tablet and laptop is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

h. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons: Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

6. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

7. The property to be searched are the following cellular telephones, which are currently located at Gastonia Police Department Property Control.

   a. *One Black Samsung Phone, Model# SM-J260T1, IMEI # 356212108564411*
   b. *One Blue Motorola Phone, Model# XT19555, IMEI# 359527095896758*

4

**PROBABLE CAUSE**

8. The GPD, Drug Enforcement Administration (DEA), and Homeland Security Investigations (HSI) are conducting a criminal investigation involving illegal drug trafficking activities, in violation of Title 21, United States Code, Sections 841 and 846, by Jeffrey Donald BLACK, and others in Gaston County and elsewhere, within the Western District of North Carolina.

9. On October 24, 2018, CMPD officers executed a search warrant at the Airport Inn (room 161) located at 4330 Keeter Drive, Charlotte, rented by Defendant Jeffrey Donald BLACK. As the law enforcement team neared, they saw BLACK and a female exit. When they arrested BLACK, they found $502 in cash on his person and a bag with 23.78 grams of methamphetamine, one with 1.62 grams of heroin, and 0.18 gram of cocaine in his underwear. In BLACK's green Escalade, they found a plastic baggie stuffed behind a cup holder that contained 3.98 grams of methamphetamine as well as two stacks of cash ($1,500 and $1,750) folded with rubber bands around them, concealed behind the radio to the back right of the driver's floorboard.

10. On December 16, 2019, an interview was conducted with a co-conspirator and cooperating defendant ("CD #1"), who has since pleaded guilty in this district. During the interview, CD #1 explained that Jeff BLACK was involved in distributing methamphetamine, cocaine, and heroin in the Charlotte area. CD #1 was the girlfriend of CD #2, who has also since pleaded guilty in this district, and advised that CD #2 was a regular customer of BLACK. CD #1 admitted specifically being present during drug transactions between CD #2 and BLACK at BLACK'S residence.

11. On February 18, 2020, an interview was conducted with a third cooperating defendant ("CD #3"), who has since pleaded guilty in this district. During that interview, CD #3

5

explained her involvement in the drug trafficking activities in the Charlotte area. As part of that interview, CD #3 described her experience and knowledge of Jeff BLACK as a drug source of supply in Charlotte. CD #3 learned that BLACK was a drug source of supply through CD #2 CD #2 routinely purchased methamphetamine and cocaine from BLACK. According to CD #3, she was an associate of CD #2 and had been present during drug transactions between CD #2 and BLACK. CD #3 also attempted to broker drug transactions between BLACK and other local distributors.

12. The investigative team has been able to corroborate the statements of CD #1 and CD #3 to the extent possible, with nothing being found to be untruthful; thus, I submit they are credible and reliable.

13. A confidential informant ("CI") – who agreed to cooperate with the investigation, making statements against his/her own penal interest – said that he/she had obtained at least 28 ounces (784 grams) of methamphetamine from Defendant BLACK on approximately 14 occasions over the prior month, and the drugs seized from the CI was the remainder of a half-pound of methamphetamine he/she obtained from BLACK. The CI had been present on two occasions when BLACK provided a pound of crystal methamphetamine each time to another co-conspirator.

14. On November 18, 2020, the investigative team utilized the aforementioned CI to conduct a controlled purchase of two ounces (approximately 56 grams) of methamphetamine (and a small amount of heroin) from Defendant BLACK at his residence, 8509 Hammonds Street, Charlotte, North Carolina.

15. On November 25, 2020, the investigative team obtained a federal arrest warrant for Defendant BLACK (3:20-mj-344) and a federal search warrant for his 8509 Hammonds Street residence (3:20-mj-343) in the Western District of North Carolina (WDNC).

16. On December 1, 2020, the investigative team again utilized the aforementioned CI to conduct a controlled purchase of four ounces (approximately 112 grams) of methamphetamine from Defendant BLACK at his 8509 Hammonds Street residence.

17. Also on December 1st, the investigative team conducted a traffic stop on a vehicle being driven by Defendant BLACK. Defendant BLACK was arrested and the investigative team seized from Defendant BLACK's possession two cellular phones (the "Target Devices" listed in Attachment B), which were placed into Gastonia Police Department Property Control for evidence purposes.

18. After Defendant BLACK was taken into custody, the investigative team executed the federal search warrant at his 8509 Hammonds Street residence. As a result, the investigative team seized two firearms: one Smith & Wesson 9mm handgun, serial# HTE7335; and one KelTec PF9 9mm handgun with laser, serial# RK385, along with marijuana, and several dozens of pills, which appeared to be possessed with intent to distribute.

19. Based on my training and experience, I know that the cellular phones to be searched were stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as the day they were seized.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my training and experience, I know that electronic device can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for long periods of time on the device. This information can sometimes be recovered with forensics tools.

7

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic device were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer or a wireless telephone is evidence may depend on other information stored on the computer or wireless telephone and the application of knowledge about how a computer or wireless telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. It is also noted that sometimes the standard way of retrieving forensic evidence from cellular phones will not work and this Affiant is requesting approval to use sophisticated methods such as

but not limited to JTAG, Rooting, Chip Off or any other methods which will extract data from the Device. Some of these sophisticated methods may render the Device unusable. Further, this Affiant is also requesting the authority to send any of the above mentioned Device, if needed, out of the district to forensic and or cryptologic specialists for examination, unlocking and de-crypting of the Device.

23. *Manner of execution.* Because this warrant seeks only permission to examine device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24. I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the two cell phones described in Attachment B to seek the items described in Attachment C.

/s/ M. Clint Bridges                                      .
AFFIANT, TASK FORCE OFFICER M. CLINT BRIDGES
U.S. DRUG ENFORCEMENT ADMINISTRATION

*AUSA Steven R. Kaufman has reviewed this Affidavit.*

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 3rd day of December, 2020, at 4:15 pm.

Signed: December 3, 2020

David C. Keesler
United States Magistrate Judge

**ATTACHMENT B**

The properties to be searched are the following two cellular telephones seized by law enforcement from Jeffrey Donald Black on December 1, 2020:

A. One Black Samsung Phone, Model# SM-J260T1, IMEI # 356212108564411
B. One Blue Motorola Phone, Model# XT19555, IMEI# 359527095896758

# ATTACHMENT C

1. All records on the phones and other electronic devices described in Attachment B that relate to violations of 21 U.S. Code Sections 841 and 846, including but not limited to the following:

    a. Any and all communications between the user(s) of the Device and any coconspirators;
    b. Evidence indicating the Device account owner/user's state of mind as it relates to the crimes under investigation;
    c. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).
    d. Evidence of communications amongst co-conspirators, and between coconspirators and unwitting individuals.
    e. All bank records, checks, credit card bills, account information, and other financial records.
    f. Information regarding narcotics trafficking, to include documents, photos, videos, social media posts, internet searches, calls, and texts regarding drug network affiliation.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.